This case was adjourned from the Circuit Court of James’ City County. The judge of that court during its session in April, 1811, brought into court the following certificate, which was ordered to be entered.
*71 ‘‘Virginia to wit. On the 25th day of January, 1811, I, William Nelson, one of the judges of the general court, and judge of the circuit court of James’ City county, having taken the affidavit of a witness concerning a duel, then about to take place between William Irvine, and James W. Murdaugh, called upon Benjamin B. Jones, and demanded his affidavit as additional testimony, on which to ground a warrant against those concerned. The said Benjamin B. Jones wished to consult counsel, and after consulting them, refused to give me any information on the subject. I informed him that according to the opinion of some, I had a right to commit him, but as I had doubts on the subject I should not do that, but should either proceed against him at the then next session of the circuit court of James’ City county, or refer the case to the general court.” The circuit court then ordered the certificate and the follow-271 ing questions to be adjourned to *the general court. “First, whether a judge out of court hath a right, when he hath reason to suspect a duel is about to take place, to punish a witness who may refuse out of court to give testimony, if the party accused be not before the judge, and if so, in what manner: Secondly, hath he such right, when the party accused is before the judge.”
The general court, June 17, 1812, certified it to be their opinion, “that a judge out of court hath a rig-ht, when he hath reason to suspect a duel is about to take place, to commit a witness who may refuse out of court to give testimony by affidavit, when the party accused is not before the judge, until he shall give testimony, and that a fortiori, such power exists when the party accused is before the judge.”

Criminal Law—Trial for Felony—Examination by Examining Court.—In Buskirk v. Judge, 7 W. Va. 103, it is said; “It has been frequently held by the court of appeals of Virginia before the formation of this state, that it was error to put a prisoner upon trial, on an indictment for felony, found by a grand jury, in the circuit court, before examination of him for the offence in the county-or corporation court, if such examination was properly claimed; and that for such error the final judgment of conviction hy the circuit court, upon a verdict of guilty should be reversed upon writ of error. Commonwealth v. McCaul, 1 Va. Cas. 300; Com. v. Cohen, 2 Va. Cas. 158; Angel v. Commonwealth, 2 Va. Cas. 231; Hurd v. Commonwealth, 5 Leigh 715; Page v. Commonwealth, 9 Leigh 683. It is clear from the foregoing authorities that if Buskirk is entitled to he examined before the examining court provided by the act of April 3, 1878, before the circuit court can try him for the felony for which, he is indicted and held, and the circuit court does proceed to try him upon the indictment before such examination is had, and he is convicted, it will be error sufficient to require this court to reverse the judgment of conviction upon a writ of error, on the error being properly shown by the record. A writ of error then from this court in such case is a proper and legal remedy. This being so, the circuit court having jurisdiction of the subject, will prohibition lie to stop the trial of the case simply because the court erred, if error it was, in deciding that Buskirk was not entitled in that case to the examination by the county court before trial upon the indictment which Bnskirk claimed and still claims?” In this case a writ of prohibition to the trial court was denied, since the proper remedy was by writ of error.
Jurors—Separation.—In State v. Harrison, 36 W. Va. 732, 15 S. E. Rep. 983, it is said: “Separation merely does not necessarily annul a verdict; it does so only prima facie. Two Virginia cases are spoken of as holding that separation per se annuls the verdict. McCaul’s Case, 1 Va. Cas. 271; Overbee’s Case, 1 Rob. (Va.) 756. Perhaps I may add Wormley’s Case, 8 Gratt. 712, though Judge Rives, in Philips’ Case, 19 Gratt. 641, says, perhaps correctly, that it is not to be interpreted as so holding. In none of these cases is there any reasoning by the court, except in McCaul’s Case, and in it Judge Nelson, after saying that the one view of the subject was that the law required the jury to be kept entirely inaccessible, so that communication with them would be impossible, and the other view was that mere separation, unless it be proved that there has been some conversation or *72 tampering with a member of the jury, shall not vitiate a verdict, and there must be proof to work this effect, disclaims a decision of the general principle, saying the court was not called on to decide between the two views, and would decide only whether the separation in that particular case should overthrow the verdict. But later and well-considered cases hold that mere separation will not per se impair a verdict. State v. Cartright, 20 W. Va. 32; State v. Robinson, Id. 713; Thompson’s Case, 8 Gratt. 637; Philips’ Case, 19 Gratt. 485; McCarter’s Case, 11 Leigh 633. Even in the old case of'Thomas. 2 Va. Cas. 479, the doctrine that separation per se is fatal to the verdict is repelled.” See, citing principal case, Younger v. State, 2 W. Va. 582.
See monographic note on "Juries” appended to Chahoon v. Com., 20 Gratt. 733.
Verdicts—impeaching by Testimony of Jurors.—In State v. Cartright, 20 W. Va. 43, it is said: “It is, however, admitted in all the cases, in which the testimony of jurors is received, that it ought to be heard with very great caution, because ‘ajuror, who comes forward to impeach his verdict on the ground of his own misconduct, has little or no claim to our credit; and the safest general rule,’ says Moncure, J., ‘is to shut the door against him. A person convicted of perjury is an incompetent witness. Why nota juror, who denies the truth of his verdict, and, if his denial be true, thereby convicts himself ot the highest moral, if not legal perjury. ’ 14 Gratt. 632.
“In Cochran v. Street, 1 Wash. 79, and Moffett v. Bowman, 6 Gratt. 219, the verdict was set aside on the affidavits of jurors. And in Price v. Warren, 1 H. & M 385; Shobe v. Bell, 1 Rand. 39; Harnsbarger v. Kinney, 6 Gratt. 287; and Carr v. Magruder, 2 Pat. & H. 107, the court refused to set aside'the verdict on such affidavits. In McCaul's Case. 1 Va. Cas. 271; Kennedy’s Case, 2 Va. Cas. 510; Overbee’s Case, 1 Rob. 756; McCarter’s Case, 11 Leigh 633; Thompson’s Case, 8 Gratt. 637; an'd Read’s Case, 22 Gratt. 924, the affidavits of jurors were read in support of their verdicts; but no rule is attempted to be laid down or any principle announced as to the character of the case or the state of facts, in which it is proper to admit such affidavits. Nor does it clearly appear, what weight, if any, was given to the affidavits of the jurors in these cases.
“In this unsatisfactory and undefined condition of the law and without intending to decide, that there are no exceptions, we think, as a general rule, where the evidence of jurors is admissible, it ought to be received with very great caution, and except in very special cases it ought to be admitted generally only in support of their verdict in cases where facts are brought to the attention of the court regarding the conduct of the jury or one or more of its members, which prima facie vitiates their verdict.”
See, in accord. State v. Harrison, 36 W. Va. 732, 15 S. E. Rep. 983.